**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re<br><br>**OYOTOYO, INC**, *et al.*,<br><br>              **Debtors** | Chapter 11<br><br>Case No. 17-41261-EDK<br>(Jointly administered) |

**AMENDED[1] APPLICATION TO EMPLOY JEFFREY D. STERNKLAR LLC AS COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION OYO SPORTSTOYS, INC., AND TO PAY POSTPETITION RETAINER**

Pursuant to Section 327(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure, MLBR 2014-1 and 9010-2, the Debtor OYO Sportstoys, Inc. ("**OYO Sports**" or "**Debtor**"), and respectfully request that this Court enter an order substantially in the form of the proposed order attached as Exhibit B authorizing it to retain Jeffrey D. Sternklar ("**JDSLLC**") as its bankruptcy counsel in this Chapter 11 case *nunc pro tunc* to July 30, 2017. In support of this application, the Debtor relies upon the Declaration of Jeffrey D. Sternklar (the "**Declaration**") filed contemporaneously with this Application. In further support of this application, the Debtor respectfully states as follows:

**JURISDICTION**

1.      The Court has jurisdiction to consider and determine this application pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] This amendment only corrects the "Date" column in what is now footnote 3 below, and otherwise is identical to the original Application. The original "Date" column mistakenly was not formatted to show the actual dates, and instead reflected meaningless numbers where dates should have been referenced.

1

2. The statutory predicates for the relief requested herein are Section 327(a) of the Bankruptcy Code and Rule 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. On July 30, 2017 (the "**Petition Date**"), OYO SPORTS filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. OYO SPORTS continues in possession of his assets and continues to operate as debtor- in-possession pursuant to Sections 1107 and 1108 of the Code.  As of the date of this motion, no official committee of creditors has been appointed.

## RETENTION OF JDSLLC

5. OYO SPORTS seeks an order of this Court authorizing the employment of JDSLLC as its bankruptcy counsel in its Chapter 11 case pursuant to Sections 327 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and Massachusetts Local Bankruptcy Rule 2014-1, in accordance with and subject to the engagement letter ("**Engagement Letter**") between OYO SPORTS and JDSLLC attached as Exhibit A.

6. OYO SPORTS requests authority to employ JDSLLC due to the extensive knowledge and expertise in the areas of law relevant to this chapter 11 case possessed by Jeffrey D. Sternklar, the principal of JDSLLC.  OYO SPORTS believes that Mr. Sternklar is well qualified to represent it in these chapter 11 cases.  OYO SPORTS requires the retention of JDSLLC to perform the legal services necessary to assist it in performing its duties as debtor-in-possession.  Mr. Sternklar has the requisite experience and bankruptcy expertise to provide the services required by the Debtor.  Mr. Sternklar is certified as a Business Bankruptcy specialist by the American Board of Certification.

7. Subject to the terms and conditions of the Engagement Letter, OYO SPORTS proposes to retain JDSLLC to render various legal services, including, without limitation, the following:

a. Advising OYO SPORTS with respect to its rights, powers and duties as debtor-in-possession in the continued operation and management of its businesses and properties;

b. Advising OYO SPORTS with respect to any plan of reorganization and any other matters relevant to the formulation and negotiation of a plan or plans of reorganization in these cases;

c. Representing OYO SPORTS at all hearings and matters pertaining to its affairs as debtor and debtor-in-possession;

d. Preparing, on OYO SPORTS's behalf, all necessary and appropriate applications, motions, answers, orders, reports, and other pleadings and other documents, and review all financial and other reports filed in this Chapter 11 case;

e. Advising OYO SPORTS with respect to, and assisting in the negotiation and documentation of, financing agreements, debt and cash collateral orders and related transactions;

f. Reviewing and analyzing the nature and validity of any liens asserted against the OYO SPORTS's property and advising OYO SPORTS concerning the enforceability of such liens;

g. Advising OYO SPORTS regarding his ability to initiate actions to collect and recover property for the benefit of their estates;

h. Advising and assisting OYO SPORTS in connection with the potential sale of OYO SPORTS's assets;

i. Advising OYO SPORTS concerning executory contracts and unexpired lease assumptions, lease assignments, rejections, restructurings and recharacterization of contracts and leases;

j. Reviewing and analyzing the claims of OYO SPORTS's creditors, the treatment of such claims and the preparation, filing or prosecution of any objections to claims;

k. Commencing and conducting any and all litigation necessary or appropriate to assert rights held by OYO SPORTS, protect assets of OYO SPORTS's Chapter 11 estate or otherwise further the goal of completing OYO SPORTS's successful reorganization other than with respect to matters to which OYO SPORTS retains special counsel;

l. Coordinating with all other persons or entities, including, without limitation, any official committee of unsecured creditors appointed in these cases, as necessary, including,

without limitation, with respect to the preparation, filing and confirmation of any chapter 11 plans of reorganization or plans of liquidation; and

m. Performing all other legal services and providing all other necessary legal advice to OYO SPORTS which may be necessary, desirable or proper in OYO SPORTS's bankruptcy proceeding.

8. JDSLLC will seek compensation based upon its normal and usual hourly billing rates and will seek reimbursement of expenses. Mr. Sternklar's current hourly billing rate is $450. The current hourly billing rate for paralegals at JDSLLC is $200. From time to time, JDSLLC adjusts its usual hourly billing rates in the ordinary course of its business. In the event of such an adjustment, JDSLLC will seek compensation at the adjusted hourly rate from and after the date of the adjustment.

9. JDSLLC will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of services rendered. JDSLLC reserves its right to seek an enhancement of its fees or a lodestar award greater than its normal hourly time charges, subject to this Court's approval in accordance with applicable law.

10. JDSLLC was initially engaged by the Debtor on June 19, 2017, to provide advice regarding OYO Sports's restructuring efforts, including the prospects of filing a voluntary chapter 11 bankruptcy petition. OYO Sports paid JDSLLC a retainer of $5000 initially on or about June 19, 2017. JDSLLC immediately began efforts to analyze the Debtor's affairs and provided legal advice to the Debtor. JDSLLC's first invoice, dated June 30, 2017, was in the amount of $3,915, which amount was deducted from the initial $5000 retainer. The remaining portion of the retainer of $1085 was held in JDSLLC's IOLTA account as a continuing retainer for future billings.

11.     In early or mid-July 2017, it became apparent to the Debtor that it would have to file a bankruptcy petition.  The Debtor instructed JDSLLC to begin work immediately to prepare to file a chapter 11 voluntary petition and to negotiate and prepare all necessary "first day motions" attendant to the filing of OYO Sports's voluntary petition.  JDSLLC performed the tasks requested of it by the Debtor.

12.     JDSLLC and the Debtor entered into the Engagement Letter with respect to the chapter 11 filing.  Pursuant to the Engagement Letter, the Debtor (i) on July 26, 2017, paid JDSLLC $25,000 on account of fees and expense, and (ii) on July 27, 2017, the chapter 11 filing fee of $1717.[2]  Upon information and belief, the source of funds for these payments was from operations and one or more loans to the Debtor from Mr. Martin Hanssmann, an employee and officer of the Debtor.  The Debtor incurred fees from July 1 – July 29 (the day before the Petition Date) to JDSLLC for $22,860, which the Debtor incurred for JDSLLC's efforts in connection with the preparation of OYO Sports's petition, related schedules and lists, and the preparation and negotiation of OYO Sports's first day motions.  JDSLLC was paid this amount ($22,860) plus the $1717 chapter 11 filing fee from the cash paid to JDSLLC by the Debtor, and holds the balance ($3,278) as a retainer in this case.[3]

---

[2] The Debtor mistakenly remitted the sum of $1770 for the filing fee, or $53 more than the actual $1717 filing fee.  By agreement with the Debtor, JDSLLC is holding this additional $53 as part of its retainer.

[3] The calculation of the remaining retainer is as follows:

| DATE | AMT. | PURPOSE |
| --- | --- | --- |
| 6/19/2017 | 5,000.00 | Retainer |
| 6/30/2017 | (3,915.00) | June activity/Inv. 10303 |
| 7/26/2017 | 25,000.00 | Payment |
| 7/27/2017 | 1,770.00 | Payment |
| 7/29/2017 | (22,860.00) | July prepetition Fees/inv. 10324 |

5

13. Mr. Hanssmann has agreed to loan the Debtor the sum of $25,000, which the Debtor and Mr. Hanssmann also have agreed to further advance to JDSLLC as an additional postpetition retainer subject to this Court's approval. JDSLLC shall apply all funds held as a retainer to its allowed final compensation and expense reimbursement and return any unused portion to OYO SPORTS.

## DISINTERESTEDNESS OF JDSLLC

20. JDSLLC has filed the Declaration of Mr. Sternklar in connection with this application and in accordance with Federal Rules of Bankruptcy Procedure 2014 and 2016, and MLBR 2014-1. Prior to the Petition Date, JDSLLC and Mr. Sternklar represented the Debtor in connection with its financial affairs and in preparation for the filing of its bankruptcy case.

21. JDSLLC has not represented, nor does it now represent, any interest adverse to OYO SPORTS with respect to the matters on which JDSLLC is to be employed. JDSLLC and its principals and employees are otherwise disinterested persons with respect to the Debtors, as that term is defined in the Bankruptcy Code.

20. JDSLLC has worked with Jacen Dinoff and KCP Advisory Group, the Debtor's proposed financial advisors, in other bankruptcy matters, as follows:

> a    Prior to the formation of JDSLLC and while at a different law firm, Mr. Sternklar, the principal and owner of JDSLLC, previously represented Mr. Dinoff in his capacity as "PET Trustee" under the confirmed chapter 11 plan of reorganization in the jointly administered cases in this Court appearing as Case No. 11-31114, *In re Northern Berkshire Healthcare, Inc*.
>
> b    Mr. Sternklar was counsel to the debtor in the case numbered and styled Case No. 10-17716, *In re TLC Americas LLC* in this Court. Mr. Dinoff

---

7/29/2017    (1,717.00)  Chap. 11 filing fee/inv. 10324
             3,278.00    Remaining Retainer

6

served as the Chief Restructuring Officer of the debtor in the *TLC Americas LLC* case.

  c Mr. Dinoff served as the Chief Restructuring Officer of the Debtor in the case number and styled Case No. 15-14983-FJB, *In re QVL Pharmacy Holdings, Inc.* in this Court. After successfully confirming a chapter 11 plan in the *QVL* case, Mr. Dinoff was retained as the post-confirmation plan trustee. The *QVL* case remains pending in this Court. JDSLLC represents the secured creditor in that case.

  d Mr. Dinoff served as the financial advisor to James M. Cashman his wholly owned entities prior to the filing by Mr. Cashman and certain of those entities of voluntary chapter 11 bankruptcy petitions in this Court. The chapter 11 cases of Mr. Cashman and his business entities are pending and are jointly administered under docket number 17-12205-MSH. JDSLLC represents Mr. Cashman as the debtor and debtor in possession in those jointly administered chapter 11 cases.

## REQUEST FOR *NUNC PRO TUNC* APPOINTMENT

21. This Application is filed within 14 days of the Petition Date. Pursuant to MLBR 2014-1 (d), therefore, JDSLLC requests that the effective date of his employment be the Petition Date.

## APPROVAL OF POSTPETITION RETAINER

22. As noted above, subject to this Court's approval, the Debtor has agreed to borrow funds from Mr. Hanssmann as an administrative expense in accordance with the Court's prior authorization[4] and to use such funds for, *inter alia*, payment to JDSLLC of a postpetition retainer of $25,000. Payment by a debtor of a postpetition retainer is subject to approval of this Court. See, In re Fadili, 365 B.R. 7, 16 (Bankr. D. Mass. 2007) (footnote omitted). The Court has authority under section 328(a) to authorize retention of JDSLLC on any reasonable terms and

---

[4] At a hearing in this matter on August 9, 2017, this Court ruled that the Debtor may incur debt from Mr. Hanssmann for credit card usage and cash advances, with such debt having the status of an administrative expense. The Debtor will borrow the funds from Mr. Hanssmann to pay the postpetition retainer described in this Application in accordance with this authority. The Debtor has prepared a draft proposed order regarding this ruling, and has submitted the draft proposed order to the United States Trustee for review and comment. The Debtor intends to submit the proposed order for the Court's consideration after the Debtor receives final comments from the United States Trustee's office.

conditions of employment, including on a retainer. While it appears no case in this District has addressed the issue, courts elsewhere have relied on this specific grant of authority as grounds to approve a postpetition retainer. See, In re Knudsen Corp., 84 B.R. 668, 670 (9th Cir. B.A.P. 1988); In re Truong, 259 B.R. 264, 267 (Bankr. D.N.J. 2001).

23.     In Knudsen (84 B.R. at 669-70), counsel sought authorization for disbursement of fees postpetition with court approval occurring after, not before, payment of fees. The Court reasoned that disbursement of fees postpetition without prior court approval is in essence a "retainer" that the Court may authorize pursuant to section 328(a). Id. at 671. In evaluating disbursement of funds prior to Court approval of the fees to be paid, the Court noted that the critical factor is that the fees must not be finally allowed (i.e., they must be subject to repayment) until a detailed application is filed, an opportunity for objection has been provided, and the court has reviewed the application." In re Truong, 259 B.R. at 267, citing In re Knudsen, 84 B.R. at 672-73. The Knudsen court determined that the following findings must be made for a court to authorize postpetition disbursement of funds to be held for fees prior to court approval:

   1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

   2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

   3. The court is satisfied that counsel can respond to any subsequent court disallowance of the fees already paid; and

   4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

Id. at 672–673.

24.     The Truong court noted that the Knudsen criteria have been widely followed, citing In re Bennett Funding Group, Inc., 213 B.R. 227, 232-33 (Bankr. S.D.N.Y. 1997), In re W&W Protection Agency, Inc., 200 B.R. 615, 620-21 (Bankr. S.D. Ohio 1996); In re Dandy

8

Lion Inns of Am., 120 B.R. 1015, 1017-18 (D. Neb. 1990). The issue in Truong, as in this case, is whether the Court should approve a postpetition retainer. The Truong court tweaked the Knudsen test, noting that "to the extent that the Knudsen criteria limits its applicability to large cases where waiting an extended period for payment creates hardship, the test is too restrictive for the broad range of retention terms permitted by Code § 328, which is restricted only by the reasonableness of the retention terms proposed by the applicant." In re Truong, 259 B.R. at 267. Instead, the Court held that "[r]egardless of the size of the case, the bottom line consideration should be whether the terms of retention are fair; both to the professional whose retention is sought, as well as to the debtor and its creditors who must bear the expense. Id.

25.  Regardless whether the Court employs the Knudsen test with or without the Truong tweak, the Debtor submits that grounds exist here for allowance of the requested postpetition retainer. First, while this case is not "unusually large" compared to cases filed around the United States, it is a reasonably sized chapter 11 case in this District. Under Truong, the terms of the proposed postpetition retainer are fair to all parties. To assist the Debtor in maximizing its cash flow in the first few days of this case, counsel and the Debtor agreed to defer $25,000 of the full retainer for 21 days after the Petition Date.

26.  The second factor also supports allowance of the postpetition retainer. JDSLLC will suffer hardship if the retainer is not paid because absent payment of the retainer JDSLLC will suffer the burden of indirectly financing the administration of this case. There is no reason or policy that justifies imposing on JDSLLC the full risk to its fees and the obligation to provide indirect postpetition financing of the administration of this case.

27.  The third factor also is satisfied. The retainer will be held by JDSLLC in its IOLTA account, pending the Court's allowance or disallowance of its interim fee applications, which will be filed much later in this case, and its final fee application, which JDSLLC

contemplates will be filed after the Debtor confirms a chapter 11 plan. The funds will be available to respond to any order of the Court requiring disgorgement.

28. The fourth factor also is satisfied, in that approval of this Application and the postpetition retainer "is, itself, the subject of a noticed hearing prior to any payment thereunder." The Debtor will only pay JDSLLC the postpetition retainer if the Court allows this Application and authorizes such payment. All of JDSLLC's fees, of course, will be subject to court approval, after notice and a hearing, in connection with its contemplated interim and final fee applications.

## NOTICE AND SERVICE

29. OYO SPORTS has served this Application upon all parties receiving ECF service in this case, which includes counsel for the United States Trustee and Martin Hanssmann, and further has provided electronic service by e-mail upon (i) counsel for Liquid Capital Exchange, Inc., and (ii) counsel for Mars 2000, Inc. OYO SPORTS will serve notice of any hearing and objection deadline on this Application to the same parties in the same manner. OYO SPORTS submits that service in this fashion will provide notice of the Application and any hearing on the Application to all persons and entities who have an actual interest in the matters that are the subject of the Application. Accordingly, OYO SPORTS requests that the Court determine that notice and service in this fashion is appropriate and sufficient, and that no further notice or service of the Application, notice of any hearing date and notice of the objection deadline be required.

**WHEREFORE,** OYO SPORTS and JDSLLC respectfully request that this Court enter an Order in the form attached as Exhibit B (a) authorizing the retention of JDSLLC as counsel to OYO SPORTS under the terms and conditions set forth in this application and in the Engagement Letter; (b) authorizing the Debtor to pay to JDSLLC a postpetition retainer of $25,000, as set forth above and in the Engagement Letter; (c) limiting notice as requested above

and (d) granting to OYO SPORTS such other and further relief as the Court deems just and proper in the circumstances.

Dated:  August 14, 2017          Respectfully Submitted,
OYO SPORTSTOYS, INC.
By its proposed attorney,

/s/ Jeffrey D. Sternklar
Jeffrey D. Sternklar (BBO No. 549561)
jeffrey@sternklarlaw.com
**JEFFREY D. STERNKLAR LLC**
26th Floor
225 Franklin Street
Boston, MA 02110
Tel:  617-396-4515
Fax: 617-507-6530

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August 2017, a true copy of the above document was served upon all interested parties obtaining service through this Court's ECF system, which this Court's records appear to indicate are the following:

- **Richard King**  USTPRegion01.WO.ECF@USDOJ.GOV
- **Peter N. Tamposi**   peter@thetamposilawgroup.com, Judy@tlgnh.com
- **Lisa D. Tingue**   lisa.d.tingue@usdoj.gov
- **Herbert Weinberg**   hweinberg@jrhwlaw.com, bmessina@jrhwlaw.com,herbweinberglaw@gmail.com

/s/ Jeffrey D. Sternklar
Jeffrey D. Sternklar